Lina Franco
Lina Franco Law, P.C.
42 Broadway, Suite 12-126
New York, New York 10004
Tel (800) 933-5620

Ryan Lozar
The Law Office of Ryan Lozar, P.C.
305 Broadway, 9th Floor
New York, NY 10007
Tel:  (310) 867-1562

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
Felix Vasquez, Gustavo Macedo, Salvador Alvarado,
Jesus Eduardo Esquivel, Aaron Saavedra, Carlos
Bernal, Nolberto Gomez, Emanuel Flores, Pedro
Mendez and Eduardo Quiroz *individually and on*
*behalf of others similarly situated,*

                             *Plaintiff,*

                 -against-

Fast Labor Inc., Fine Products and Services Inc.,
Arthur Werner Moving & Storage Inc. (d/b/a "Arthur
Werner Moving & Storage"), Mordechai Bitton, Dana
Bitton, Andrew Zeitlin and Timothy Veksler,

                         *Defendants.*
----------------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**
**and CLASS ACTION**
**UNDER FRCP 23**

**ECF Case**

**JURY TRIAL**
**DEMANDED**

       Plaintiffs Felix Vasquez, Gustavo Macedo, Salvador Alvarado, Jesus Eduardo Esquivel,

Aaron Saavedra, Carlos Bernal, Nolberto Gomez, Emanuel Flores, Pedro Mendez and Eduardo

Quiroz individually and on behalf of others similarly situated ("Plaintiffs"), by and through their

attorneys, Lina Franco Law, P.C. and The Law Office of Ryan Lozar, P.C., bring this Class and

Collective Action Complaint on behalf of themselves and their similarly situated co-workers

against Defendants Fast Labor Inc. ("Fast Labor"), Arthur Werner Moving & Storage, Inc. (d/b/a Arthur Werner Moving & Storage) (hereinafter "AWMS"), Fine Products and Services Inc. ("Fine Products"), Mordechai Bitton, Dana Bitton, Andrew Zeitlin and Tim Veksler (collectively, "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq., as recently amended by the Wage Theft Prevention Act ("WTPA"), N.Y. Lab Law § 195(3), and related provisions from Title 12 of New York Codes, Rules and Regulations ("NYCRR").

## NATURE OF ACTION

1.      This Class and Collective Action Complaint seeks to recover overtime compensation, spread-of-hours pay, unlawful deductions and breach-of-contract and quantum meruit damages for Plaintiffs and their similarly situated co-workers who have been employed by Fast Labor (which, on information and belief, went by the name Fine Products from January to May 2010) and AWMS ("Corporate Defendants") as movers for some or all of the time period relevant to this action (the relevant time period being set by the federal and state claims' respective statutes of limitations).

2.      In light of Plaintiffs' allegation that Fast Labor once went by the name Fine Products in early 2010, Plaintiffs intend for any reference to Fast Labor in this Complaint to refer to that entity whatever its name at the time.

3.      Plaintiffs are all present employees of Defendants.  Plaintiffs' duties as Defendants' employees include, but are not limited to, picking up, packing, covering and ultimately moving furniture and other items within various Northeastern United States locations but with a strong focus on the greater New York City region.

4.     Fast Labor and AWMS have jointly employed Plaintiffs at all relevant times.

5.     Defendants joint employment arises from their manipulation of corporate forms in order to commit some or all of the wage violations alleged herein.  Defendants are in fact one integrated business.

6.     For example, Plaintiffs had been working as permanent AMWS employees—some of them for seven years—when Defendants split into "different" corporations for the purposes of unilaterally converting Plaintiffs into Fast Labor employees.  The point of this change is to permit Fast Labor to say that it is perpetually "referring" Plaintiffs to AMWS in order to seize 10% of Plaintiffs' earned wages as payment for the fictional referral service.

7.     Stated differently, Fast Labor never referred Plaintiffs to AWMS as Plaintiffs had been working directly for AMWS for many years when Fast Labor came into existence.

8.     Fast Labor and AMWS share the same leadership and those individuals jointly exercise control over Plaintiffs' employment as described herein.

9.     Plaintiffs have no written agreement with Fast Labor or AWMS or anyone stating that they work for a referral agency to which they will pay part of their earned wages for referred work.

10.    As described herein, Individual Defendants Mordechai Bitton, Dana Bitton, Andrew Zeitlin and Tim Veksler ("Individual Defendants") jointly employ Plaintiffs' employers for the purposes of the instant claims.

11.    Fast Labor and AMWS are moving companies with their principal place of business located at 802 East 140th Street, Bronx New York 10454.  Fast Labor and AWMS also

claim to have some outposts at 116 West 23rd Street, 5th Floor, New York, NY 10011, and 7014 13th Avenue, Suite 200, Brooklyn, NY 11228.

12.     Defendants Mordechai Bitton, Dana Bitton, Andrew Zeitlin and Tim Veksler have jointly owned, operated and controlled Defendant Corporations and, by extension, Defendant Corporations' employees, for part or all of the time period relevant to this action.

13.     At all relevant times, Plaintiffs regularly work for Defendants in excess of 40 hours per week, without receiving appropriate overtime compensation for any of the hours that they worked.

14.     At all relevant times, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

15.     At all relevant times, Defendants failed to maintain accurate recordkeeping as required by the FLSA and the NYLL.

16.     At all relevant times, Defendants failed to pay Plaintiffs minimum wage, or indeed any wage at all, for hours actually worked at the start of Plaintiffs' workday.  Pursuant to Defendants' policy, Defendants require Plaintiffs to report to Defendants' Bronx warehouse to do roughly one-and-one-half hours of preparation work before the beginning of a job at a client's home.  The work that Plaintiffs complete during this period of unlawfully unpaid labor relates to and furthers the success of Defendants' business operations.  Defendants do not pay minimum wage, or any wage, to Plaintiffs for these hours of work that Defendants require that Plaintiffs perform.

17.     At all relevant times, Defendants had a policy requiring unlawful deductions from Plaintiffs' wages, for example, for items which were damaged during Plaintiffs' shifts.  Plaintiff

Vasquez is one of the Plaintiffs who had unlawful deductions taken from his wages for broken or damaged material. These unlawful deductions aggravated Defendants' existing non-compliance with various federal and state wage laws. See, e.g., 29 C.F.R. § 531.35, N.Y. Lab. Law § 193.

18.     The 10% taken from Plaintiffs' earned wages for Fast Labor's fictional "referral" of Plaintiffs to other Corporate Defendants violates the FLSA and the NYLL by aggravating Defendants' failure to pay Plaintiffs wages that meet Defendants' overtime-pay and spread-of-hours-pay obligations. The wage-percentage withholding also constitutes a stand-alone violation of the FLSA and the NYLL prohibition against unlawful deductions. See, e.g., 29 C.F.R. § 531.35, N.Y. Lab. Law § 193.

19.     At times, Defendants have also sought to justify the wage-percentage withholding by pointing to Plaintiffs' undocumented status. It is unclear how Defendants believe that Plaintiffs' immigration status impacts their right to receive earned wages, but whatever the theory this remains an unlawful deduction from Plaintiffs' earned wages. See, e.g., 29 C.F.R. § 531.35, N.Y. Lab. Law § 193.

20.     The unlawful wage-percentage withholding also constitutes a state law cause of action under contract law and quantum meruit principles.

21.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

22.     Plaintiffs now bring this Class and Collective Action on behalf of themselves, and other similarly situated individuals, for federal and state claims relating to unpaid overtime wages, unpaid spread-of-hours wages, failure to maintain records, and the taking of unlawful deductions pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., the

New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq., as recently amended by the Wage Theft Prevention Act ("WTPA"), N.Y. Lab Law § 195(3), and related provisions from Title 12 of New York Codes, Rules and Regulations ("NYCRR").  In addition, Plaintiffs bring this action on behalf of themselves and other similarly situated individuals for state breach-of-contract and quantum-meruit claims.

23.    In connection with the above-mentioned allegations and claims, Plaintiffs seek compensatory damages as well as applicable liquidated damages, interest, attorney's fees and costs.

24.    Plaintiffs seek certification of this action as a collective action under 29 U.S.C. § 216(b) on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants, and as a putative class action under FRCP 23 with respect to the New York state law claims.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction pursuant to 28 USC §§1331, and 1337 and jurisdiction over Plaintiffs' state-law claims pursuant to 28 USC § 1367.

26.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

27.    This Court is empowered to issue a declaratory judgment pursuant to 28 USC §§ 2201 and 2202.

28.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because Corporate Defendants reside in this District, certain Plaintiffs reside in this

District and because a substantial part of the events that are the subject of the litigation transpired in this District.

## COLLECTIVE-WIDE FACTUAL ALLEGATIONS

29.     Plaintiffs bring their FLSA claims on behalf of themselves and all similarly situated persons who work or have worked for Defendants on or after March 1, 2013, who elect to opt-in to this action (the "FLSA Collective").

30.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

31.     As part of their regular business practice, Defendants have intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

  a.   Willfully failing to pay overtime wages for hours worked in excess of 40 hours per week;

  b.   Willfully unlawfully deducting earned wages;

  c.   Willfully failing to keep records that satisfy statutory requirements.

32.     At all relevant times, Plaintiffs and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the require overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek

7

under the FLSA, willfully taking improper wage deductions and other improper credits against Plaintiffs' wages for which Defendants did not qualify under the FLSA, and willfully failing to keep records require by the FLSA.

33.     The claims of Plaintiffs stated herein are similar to those of the other employees and Plaintiffs and the FLSA Collective all perform or performed the same primary duties.

34.     Defendants are aware that FLSA required them to pay employees performing non-exempt duties, including Plaintiffs and the FLSA Collective overtime premium for hours worked in excess of 40 hours per workweek.

35.     Defendants' unlawful conduct has been widespread, repeated and consistent.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring certain NYLL claims pursuant to FRCP 23 on behalf of all of Defendants' employees who work or have worked for Defendants from March 1, 2010 and the date of final judgment in this matter ("the Class").

37.     Excluded from the Class are, inter alia, Defendants' employees who will submit timely and otherwise proper requests for exclusion from the Class.

38.     On information and belief, the size of the Class is roughly fifty individuals. Although the precise number is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

39.     Common questions of law and fact exist as to the Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

      a.   Whether Defendants violated Article 6 of the NYLL and the supporting NYS Department of Labor regulations;

b.   Whether Defendants failed to compensate the Class for hours worked in excess of 40 hours per workweek;

c.   Whether Defendants misclassified Plaintiffs and members of the Class as exempt;

d.   Whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Class, and other records required by the NYLL;

e.   Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

f.   The nature and extent of class-wide injury and the measure of damages for those injuries.

40.   Plaintiffs' claims are typical of the Class's claims that they seek to represent. Defendants employed Plaintiffs and the Class in New York State.  Plaintiffs and the Class enjoy the same NYLL rights to receive overtime; to be protected from unlawful deductions; to have legally sufficient record-keeping.  Plaintiffs and the Class have all sustained similar type of damages as a result of Defendants' non-compliance with the NYLL.  Plaintiffs and the Class have all been injured by virtue of Defendants' undercompensation of them or Defendants' failure to compensate them due to Defendants' common policies, practices and patterns of conduct.

41.   Plaintiffs will fairly and adequately represent and protect the interests of the Class's members.  Plaintiffs understand that as class representatives they assume a fiduciary responsibility to the class to represent its interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they

9

would represent and consider their own interests.  Plaintiffs understand that in decisions

regarding the conduct of the litigation and its possible settlement, they must not favor their own

interests over the Class's interests.  Plaintiffs recognize that any resolution of a class action must

be in the best interest of the Class.  Plaintiffs understand that in order to provide adequate

representation, they must be informed of developments in litigation, cooperate with class

counsel, and testify at deposition/trial.  Plaintiffs have retained counsel competent and

experienced in complex class actions and employment litigation.  There is no conflict between

Plaintiffs and the Class.

42.     A class action is superior to other available methods for the fair and efficient

adjudication of this litigation.  The members of the Class have been damaged and are entitled to

recovery as a result of Defendants' violation of the NYLL as well as its common and uniform

policies, practices and procedures.  Although the relative damages suffered by individual

members of the Class are not de minimis, such damages are small compared to the expense and

burden of individual prosecution of this litigation.  For example, Class members lack the

financial resources to conduct a thorough examination of Defendants' timekeeping and

compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such

damages.  In addition, class litigation is superior because it will obviate the need for unduly

duplicative litigation that might result in inconsistent judgments about Defendants' practices.

43.     This action is properly maintainable as a class action under FRCP 23(b)(3).

**PARTIES**

*Plaintiffs*

44.     Plaintiff Felix Vazquez ("Plaintiff Vazquez") is an adult individual residing in Queens County, New York. Plaintiff Vasquez has been employed by Defendants from 2004. At all relevant times to this complaint, Plaintiff Vasquez has been employed by Defendants as a mover.

45.     Plaintiff Gustavo Macedo ("Plaintiff Macedo") is an adult individual residing in Bronx County, New York. Plaintiff Macedo has been employed by Defendants from 2004. At all relevant times to this complaint, Plaintiff Macedo was employed by Defendants as a mover.

46.     Plaintiff Salvador Alvarado ("Plaintiff Alvarado") is an adult individual residing in Bronx County, New York. Plaintiff Alvarado has been employed by Defendants from approximately 2004. At all relevant times to this complaint, Plaintiff Alvarado has been employed by Defendants as a mover.

47.     Plaintiff Jesus Eduardo Esquivel ("Plaintiff Esquivel") is an adult individual residing in Bronx County, New York. Plaintiff Esquivel has been employed by Defendants from approximately August 2012. At all relevant times to this complaint, Plaintiff Esquivel was employed by Defendants as a mover.

48.     Plaintiff Aaron Saavedra ("Plaintiff Saavedra") is an adult individual residing in Bronx County, New York. Plaintiff Saavedra has been employed by Defendants from October 2009. At all relevant times to this complaint, Plaintiff Saavedra was employed by Defendants as a mover.

49.     Plaintiff Carlos Bernal ("Plaintiff Bernal") is an adult individual residing in Bronx County, New York. Plaintiff Bernal has been employed by Defendants from 2004. At all relevant times to this complaint, Plaintiff Bernal was employed by Defendants as a mover.

50.     Plaintiff Nolberto Gomez ("Plaintiff Gomez") is an adult individual residing in Bronx County, New York. Plaintiff Gomez has been employed by Defendants from 2007.  At all relevant times to this complaint, Plaintiff Gomez was employed by Defendants as a mover.

51.     Plaintiff Emanuel Flores ("Plaintiff Flores") is an adult individual residing in Bronx County, New York. Plaintiff Flores has been employed by Defendants from 2008. At all relevant times to this complaint, Plaintiff Flores was employed by Defendants as a mover.

52.     Plaintiff Pedro Mendez ("Plaintiff Mendez") is an adult individual residing in Bronx County, New York. Plaintiff Mendez has been employed by Defendants from 2013. At all relevant times to this complaint, Plaintiff  Mendez was employed by Defendants as a mover.

53.     Plaintiff Eduardo Quiroz ("Plaintiff Quiroz ") is an adult individual residing in Bronx County, New York. Plaintiff Quiroz has been employed by Defendants from 2013. At all relevant times to this complaint, Plaintiff Quiroz was employed by Defendants as a mover.

54.     Plaintiffs consent to being a party pursuant to 29 U.S.C. § 216(b), and bring these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b) and as representatives of the Proposed Class.

*Defendants*

55.     Individual Defendants have owned, operated and controlled Fast Labor and AWMS at all times relevant to this complaint.

56.     On information and belief, Fast Labor and AWMS are corporations organized and existing under the laws of the State of New York with a principal place of business at 802 E. 140th Street, Bronx, NY 10454, with select operations at satellite offices at 116 W.23d Street, 5th

Floor, New York, NY 10011 or 7014 13th Avenue, Suite 202 Brooklyn, New York, 11228.

Corporate Defendants' business is the provision of moving services and they operate in the five

boroughs of New York City and surrounding states.

57.     Upon information and belief, Fast Labor and AWMS individually and collectively

have more than $500,000.00 in gross annual income for the years relevant to the instant action

(independent of excise taxes).

58.     On information and belief, the operations of Fast Labor and AWMS individually

and collectively implicate interstate commerce insofar as these Defendants provide services that

extend beyond the borders of New York State, for example, New Jersey, Connecticut, Maryland,

Pennsylvania, and more.  In addition, the materials that these Defendants employ in the provision

of their services move in interstate commerce, be those materials vehicles, boxes, adhesives,

blankets, labels, dollies, gloves and more.  Finally, the Defendants' services implicate interstate

commerce insofar as their business relies heavily on the use of the system of interstate routes

maintained by the United States of America and various Individual States.

59.     Defendant Mordechai Bitton is an individual who has been the de facto and de

jure owner, officer and/or agent of Defendant Corporations during the relevant time period, and

he is sued individually.  Defendant Mordechai Bitton has possessed and exercised operational

control over Defendant Corporations, for example, he has at times relevant to this litigation

determined the wages and compensation of Defendants' employees, including Plaintiffs, and

established the schedules of the employees, maintained employee records, and had the authority

to hire and fire employees.  In particular, Mordechai Bitton has a prominent role in the setting of

13

salaries for Corporate Defendants' employees and hires and fires Corporate Defendants' employees.

60.     Defendant Dana Bitton is an individual who has been de facto and de jure owner, officer and/or agent of Defendant Corporations during the relevant time period, and she is sued individually.  Defendant Dana Bitton has possessed and exercised operational control over Defendant Corporations, for example, she has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.  In particular, Dana Bitton plays a prominent role in the setting of salaries for Corporate Defendants' employees and hires and fires Corporate Defendants' employees.

61.     Defendant Andrew Zeitlin is an individual who has been owner, officer and/or agent of Defendant Corporations during the relevant time period, and he is sued individually. Defendant Andrew Zeitlin has possessed and exercised operational control over Defendant Corporations, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

62.     Defendant Timothy Veksler is an individual who has been owner, officer and/or agent of Defendant Corporations during the relevant time period, and he is sued individually. Defendant Timothy Veksler has possessed and exercised operational control over Defendant Corporations, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

In particular, Timothy Veksler sets the schedules of Corporate Defendants' employees and does some minimal recordkeeping which process he employees to issue employees' wages.

## COMMON FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

63.     Defendants operate a moving and storage company with customers around the United States with headquarters at 802 East 140th Street Bronx, New York, 10454. At all relevant times, Individual Defendants Mordechai Bitton, Dana Bitton, Andrew Zeitlin and Tim Veksler possess or possessed operational control over Defendant Corporations; possess or possessed an ownership interest in Defendant Corporations, and control or controlled significant functions of Defendant Corporations.

64.     Corporate Defendants purport to be separate corporate entities.  On information and belief, this is not true and Defendants have manipulated the corporate forms in order to deprive Plaintiffs and other employee members of the Proposed Class of FLSA, NYLL and other state law protections.

65.     Corporate Defendants and Individual Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

66.     At relevant times, each Corporate Defendant possessed substantial control over Plaintiffs' and other similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

67.     Corporate Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' and all similarly situated individuals employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

68.     In the alternative, Corporate Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals, as the corporate divisions between them are fictional.

69.     Upon information and belief, Individual Defendants Mordechai Bitton, Dana Bitton, Andrew Zeitlin and Tim Veksler operate each Defendant Corporation as the alter ego of the other one, and/or fail to operate Defendant corporations as legal entities separate and apart from themselves by, among other things:

(a)     failing to adhere to the corporate formalities necessary to operate Defendant Corporations as separate and legally distinct entities;

(b)     defectively forming or maintaining Defendant Corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c)     transferring assets and debts freely as between all Defendants;

(d)     operating Defendant Corporations for Individual Defendants' own benefit as the sole or majority shareholder(s) even as the Defendant Corporations operated collectively in the execution of their moving business;

(e)     operating Defendant Corporations for each Individual Defendants' own benefit and maintaining control over it as a closed corporation or closely controlled entity;

(f)     intermingling assets and debts of Defendants Corporations;

(g)     diminishing and/or transferring assets of Defendant Corporations to protect their own interests; and

(h)     other actions evincing a failure to adhere to the corporate form.

70.     At all relevant times, Individual Defendants were Plaintiffs' employers within the meaning of the FLSA, NYLL and other law.

71.     Individual Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

72.     Individual Defendants supervised Plaintiffs' work schedules and conditions of employment insofar as they set up the moving jobs and determined which Plaintiffs would go to which jobs based on geography and what clients, in Individual Defendants' estimation, would prefer to have movers with a particular level of English language skills.

73.     Individual Defendants also determined the rate and method of payment for Plaintiffs and other similarly situated employees.  For example, Individual Defendants collectively coordinated the above-described restructuring of AWMS then announced that Fast Labor would withhold 10% of Plaintiffs' earned wages.  Individual Defendants also determined the method of Plaintiffs' pay by virtue of their development of policies and practices requiring other unlawful deductions to be made from Plaintiffs' earned wages, for example, to pay a client for an item that was broken over the course of a moving job.

74.     Individual Defendants also controlled and guided what limited recordkeeping that took place at AWMS, which Plaintiffs contend is deficient pursuant to FLSA and NYLL requirements.

*Individual Plaintiffs*

17

75.     Plaintiffs are present and former employees of Defendants, primarily employed in performing the duties of packing, transporting and delivering furniture to clients around the United States.

76.     Plaintiffs did not work at their own convenience, having to report to work according to a schedule devised by Defendants.  Furthermore, once scheduled for a shift, Plaintiffs did not come and go at their pleasure, but rather were controlled by Defendants.

77.     Plaintiffs worked a fixed schedule for Defendants because, according to the season (some seasons being busier for the moving-services industry), Plaintiffs knew the average number of hours they would be working in a given period.

78.     Plaintiffs are non-exempt under FLSA and the NYLL.  Among other things, Plaintiffs did not occupy what law would characterize as "professional," "executive" or even "administrative" positions, as Plaintiffs' employment for Defendants was physical labor. Plaintiffs did not receive salary and their primary duties—the packing and moving of boxes did not require advance knowledge in a field of science or learning.

79.     Plaintiffs commence this action as a collective action under 29 U.S.C. § 216(b) and as a putative class action under FRCP 23 with respect to the New York state law claims.

*Plaintiff Felix Vasquez*

80.     Plaintiff Vasquez has been employed by Defendants from approximately 2003.

81.      At all relevant times, Plaintiff Vasquez was employed by Defendants to work as a mover.

82.     Plaintiff Vasquez regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves and more that were necessary to perform his work and that were produced outside of the State of New York.

83.      Plaintiff Vasquez's work duties require neither discretion nor independent judgment.

84.     Throughout his employment with Defendants, Plaintiff Vasquez regularly worked in excess of 40 hours per week.

85.     From approximately March 2010 until present Plaintiff Vasquez works a different schedule every week, but the average number of hours rises and falls with Defendants' busy seasons.

86.     Plaintiff Vasquez works approximately 70 hours per week during the spring, summer and fall months.

87.     Plaintiff Vasquez works approximately 50-60 hours per week during the winter months.

88.     From March 2010 until March 2011, Plaintiff Vasquez was paid $12 dollars an hour.

89.     From March 2011 until March 2013, Plaintiff Vasquez was paid $13 dollars an hour.

90.     From March 2013 until present, Plaintiff Vasquez is paid $14 dollars an hour.

91.     Despite working for AWMS since 2003, nearly ten years later, due to Defendants' manipulation of corporate forms, Fast Labor began taking 10% of Plaintiff Vasquez's wages.

19

92.     Defendants regularly fail to pay Plaintiff Vazquez for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

93.     Plaintiff Vasquez was charged for furniture he purportedly damaged during a job he was scheduled to work, and Defendants' estimate of that damage was unlawfully deducted from his earned wages.

94.     Defendants did not provide Plaintiff Vasquez with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

95.     Defendants never provided Plaintiff Vasquez with a written notice, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Gustavo Macedo*

96.     Plaintiff Macedo has been employed by Defendants from 2004.

97.      At all relevant times, Plaintiff Macedo was employed by Defendants to work as a mover.

98.     Plaintiff Macedo regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves, and more, that are necessary to perform his work and that were produced outside of the State of New York.

99.      Plaintiff Macedo's work duties require neither discretion nor independent judgment.

100.    Throughout his employment with Defendants, Plaintiff Macedo regularly works in excess of 40 hours per week.

101.    From approximately March 2010 until Present Plaintiff Vasquez works a different schedule every week, with the average number of hours rising and falling in accordance with Defendants' "busy seasons."

102.    Plaintiff Macedo works approximately 70 hours per week during the spring, summer and fall months.

103.    Plaintiff Macedo works approximately 50-60 hours per week during the winter months.

104.    From March 2010 until March 2011, Plaintiff Macedo was paid $10 dollars per hour.

105.    From March 2011 until March 2013, Plaintiff Macedo was paid $11 dollars per hour.

106.    Plaintiff Vasquez is currently paid $12 dollars an hour.

107.    Despite working for AWMS since 2004, nearly ten years later, due to Defendants' manipulation of corporate forms, Fast Labor began taking 10% of Plaintiff Macedo's wages as compensation.

108.    Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

21

109.    Defendants did not provide Plaintiff Macedo with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

110.    Defendants never provided Plaintiff Vasquez with a written notice, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Salvador Alvarado*

111.    Plaintiff Alvarado has been employed by Defendants from 2003.

112.    At all relevant times, Plaintiff Alvarado was employed by Defendants to work as a mover and driver.

113.    Plaintiff Alvarado regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves and more, that are necessary to perform his work and that were produced outside of the State of New York.

114.    Plaintiff Alvarado's work duties require neither discretion nor independent judgment.

115.    Throughout his employment with Defendants, Plaintiff Alvarado has worked in excess of 40 hours per week.

116.    From approximately March 2010 until present Plaintiff Alvarado works a different schedule every week.

117.    Plaintiff Alvarado works approximately 70 hours per week during the spring, summer and fall months.

118.    Plaintiff Alvarado works approximately 50-60 hours per week during the winter months.

119.    From March 2010 until March 2011, Plaintiff Alvarado was paid $10 dollars per hour.

120.    From March 2011 until March 2013, Plaintiff Alvarado was paid $13.50 dollars per hour.

121.    Plaintiff Alvarado has been paid $15 dollars since 2014.

122.    Despite working for AWMS since 2003, nearly ten years later, due to Defendants' manipulation of corporate forms, Fast Labor began taking 10% of Plaintiff Alvarado's wages.

123.    Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

124.    Defendants did not provide Plaintiff Alvarado with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

125.    Defendants never provided Plaintiff Alvarado with a written notice, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Jesus Eduardo Esquivel*

126.    Plaintiff Esquivel has been employed by Defendants since August 2012

127.    At all relevant times, Plaintiff Esquivel has been employed by Defendants to work as a mover.

128.     Plaintiff Esquivel regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves and more, that are necessary to perform his work and that were produced outside of the State of New York.

129.     Plaintiff Esquivel's work duties require neither discretion nor independent judgment.

130.     Throughout his employment with Defendants, Plaintiff Esquivel has worked in excess of 40 hours per week.

131.     From approximately March 2010 until Present Plaintiff Esquivel works a different schedule every week.

132.     Plaintiff Esquivel works approximately 70 hours per week during the spring, summer and fall months.

133.     Plaintiff Esquivel works approximately 50-60 hours per week during the winter months.

134.     From March 2010 until March 2011, Plaintiff Esquivel was paid $10 dollars per hour.

135.     From March 2011 until March 2013, Plaintiff Esquivel was paid $11 dollars per hour.

136.     Plaintiff Esquivel has been paid $12 dollars since October 2015.

137.     Fast Labor unlawfully deducts 10% of Plaintiff Esquivel's earned wages as compensation for "referring" him to the work.

138.     Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the

job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

139.    Defendants did not provide Plaintiff Esquivel with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

140.    Defendants never provided Plaintiff Esquivel with a written notice, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Aaron Saavedra*

141.    Plaintiff Saavedra has been employed by Defendants since October 2009.

142.     At all relevant times, Plaintiff Saavedra has been employed by Defendants to work as a foreman and driver.

143.    Plaintiff Saavedra regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves and more, that are necessary to perform his work and that were produced outside of the State of New York.

144.     Plaintiff Saavedra's work duties require neither discretion nor independent judgment.

145.    Throughout his employment with Defendants, Plaintiff Saavedra has worked in excess of 40 hours per week.

146.    From approximately March 2010 until Present Plaintiff Saavedra works a different schedule every week.

147.    Plaintiff Saavedra works approximately 70 hours per week during the spring, summer and fall months.

148.    Plaintiff Saavedra works approximately 50-60 hours per week during the winter months.

149.    From March 2010 until March 2011, Plaintiff Saavedra was paid $14 dollars per hour.

150.    From March 2011 until March 2013, Plaintiff Saavedra was paid $15 dollars per hour.

151.    Plaintiff Saavedra has been paid $16 dollars since 2015

152.    Despite working for AWMS since 2009, a few years later, due to Defendants' manipulation of corporate forms, Fast Labor began taking 10% of Plaintiff Saavedra's wages.

153.    Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

154.    Defendants did not provide Plaintiff Saavedra with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

155.    Defendants never provided Plaintiff Saavedra with a written notice, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Carlos Bernal*

156.    Plaintiff Bernal has been employed by Defendants since 2004.

157.    At all relevant times, Plaintiff Bernal has been employed by Defendants to work as a mover.

158.     Plaintiff Bernal regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves and more, that are necessary to perform his work and that were produced outside of the State of New York.

159.     Plaintiff Bernal's work duties require neither discretion nor independent judgment.

160.     Throughout his employment with Defendants, Plaintiff Bernal has worked in excess of 40 hours per week.

161.     From approximately March 2010 until Present Plaintiff Bernal a works a different schedule every week.

162.     Plaintiff Bernal works approximately 70 hours per week during the spring, summer and fall months.

163.     Plaintiff Bernal works approximately 50-60 hours per week during the winter months.

164.     From March 2010 until March 2011, Plaintiff Bernal was paid $12 dollars per hour.

165.     From March 2011 until March 2013, Plaintiff Bernal was paid $13 dollars per hour.

166.     Plaintiff Bernal has been paid $13.50 dollars since 2015.

167.     Despite working for AWMS since 2004, nearly ten years later, due to Defendants' manipulation of corporate forms, Fast Labor began taking 10% of Plaintiff Bernal's wages.

168.     Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the

job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

169.    Defendants did not provide Plaintiff Bernal with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

170.    Defendants never provided Plaintiff Bernal with a written notice, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Nolberto Gomez*

171.    Plaintiff Gomez has been employed by Defendants since 2007

172.     At all relevant times, Plaintiff Gomez has been employed by Defendants to work as a mover.

173.    Plaintiff Gomez regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves, and more, that are necessary to perform his work and that were produced outside of the State of New York.

174.     Plaintiff Gomez work duties require neither discretion nor independent judgment.

175.    Throughout his employment with Defendants, Plaintiff Gomez has worked in excess of 40 hours per week.

176.    From approximately March 2010 until Present Plaintiff Gomez a works a different schedule every week.

177.    Plaintiff Gomez works approximately 70 hours per week during the spring, summer and fall months.

178.    Plaintiff Gomez works approximately 50-60 hours per week during the winter months.

179.    From March 2010 until March 2011, Plaintiff Gomez was paid $11 dollars per hour.

180.    From March 2011 until March 2013, Plaintiff Gomez was paid $12 dollars per hour.

181.    Plaintiff Gomez has been paid $13 dollars since 2015.

182.    Despite working for AWMS since 2007, some years later, due to Defendants' manipulation of corporate forms, Fast Labor began taking 10% of Plaintiff Gomez's. Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

183.    Defendants did not provide Plaintiff Gomez with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

184.    Defendants never provided Plaintiff Gomez with a written notice, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Emanuel Flores*

185.    Plaintiff Flores has been employed by Defendants since 2008

186.    At all relevant times, Plaintiff Flores has been employed by Defendants to work as a mover.

187.    Plaintiff Flores regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves and more, that are necessary to perform his work and that were produced outside of the State of New York.

188.     Plaintiff Flores work duties require neither discretion nor independent judgment.

189.    Throughout his employment with Defendants, Plaintiff Flores has worked in excess of 40 hours per week.

190.    From approximately March 2010 until Present Plaintiff Flores a works a different schedule every week.

191.    Plaintiff Flores works approximately 70 hours per week during the spring, summer and fall months.

192.    Plaintiff Flores works approximately 50-60 hours per week during the winter months.

193.    From March 2010 until March 2011, Plaintiff Flores was paid $12 dollars per hour.

194.    From March 2011 until March 2013, Plaintiff Flores was paid $13 dollars per hour.

195.     Plaintiff Flores has been paid $14 dollars since October 2014.

196.    Despite working for AWMS since 2008, nearly ten years later, due to Defendants' manipulation of corporate forms, Fast Labor began taking 10% of Plaintiff Flores's.

197.    Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the

job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

198.    Defendants did not provide Plaintiff Flores with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

199.    Defendants never provided Plaintiff Flores with a written notice, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Pedro Mendez*

200.    Plaintiff Mendez has been employed by Defendants since 2013

201.     At all relevant times, Plaintiff Mendez has been employed by Defendants to work as a mover.

202.    Plaintiff Mendez regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves and more, that are necessary to perform his work and that were produced outside of the State of New York.

203.     Plaintiff Mendez work duties require neither discretion nor independent judgment.

204.    Throughout his employment with Defendants, Plaintiff Mendez has worked in excess of 40 hours per week.

205.    From approximately 2013 until Present Plaintiff Mendez a works a different schedule every week.

206.    Plaintiff Mendez works approximately 70 hours per week during the spring, summer and fall months.

207.    Plaintiff Mendez works approximately 50-60 hours per week during the winter months.

208.    From March 2013 until March 2014, Plaintiff Mendez was paid $11 dollars per hour.

209.    Plaintiff Mendez has been paid $11.50  dollars since 2015.

210.    Fast Labor unlawfully deducts 10% of Plaintiff Mendez's earned wages. Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

211.    Defendants did not provide Plaintiff Mendez with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

212.    Defendants never provided Plaintiff Mendez with a written notice, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Plaintiff Eduardo Quiroz*

213.    Plaintiff Quiroz has been employed by Defendants since 2013

214.     At all relevant times, Plaintiff Quiroz has been employed by Defendants to work as a mover.

215.    Plaintiff Quiroz regularly handles goods in interstate commerce, such as cardboard boxes, adhesives, labels, gloves and more, that are necessary to perform his work and that were produced outside of the State of New York.

216.     Plaintiff Quiroz work duties require neither discretion nor independent judgment.

217.     Throughout his employment with Defendants, Plaintiff Quiroz has worked in excess of 40 hours per week.

218.     From approximately 2013 until Present Plaintiff Quiroz a works a different schedule every week.

219.     Plaintiff Quiroz works approximately 70 hours per week during the spring, summer and fall months.

220.     Plaintiff Quiroz works approximately 50-60 hours per week during the winter months.

221.     From 2013 to 2014 , Plaintiff Quiroz was paid $10 dollars per hour.

222.     From March 2011 until March 2013, Plaintiff Quiroz was paid $11 dollars per hour.

223.     Plaintiff Quiroz has been paid $11.50  dollars since 2015.

224.     Fast Labor unlawfully deducts 10% of Plaintiff Alvarado's wages.  Defendants regularly fail to pay Plaintiff for wages earned from the time he arrives at Defendants warehouse to do pre-job prep work until the moment Plaintiff arrives at the job site.  Defendants require Plaintiffs to report to the warehouse first and work these hours despite not permitting them a corresponding wage.

225.     Defendants did not provide Plaintiff Quiroz with each payment of wages an accurate statement of wages, as require by NYLL 195(3).

226.    Defendants never provided Plaintiff Quiroz with a written notice, in English and in Spanish (Plaintiff Quiroz's primary language), of his rate of pay, employer's regular pay day, and such other information as require by NYLL §195(1).

*Defendants' General Employment Practices*

227.    Defendants regularly require Plaintiffs to work in excess of forty (40) hours per week without paying them the proper overtime wages or spread of hours compensation.

228.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate overtime compensation or spread of hours compensation, as require by federal and state laws.

229.    Defendants, through a manipulation of corporate structures for the purpose of exploiting Plaintiffs, split AWMS into Fair Labor and AWMS after Plaintiffs had already been working for AWMS and labeled Fair Labor a referral service to which Plaintiffs would thereafter have to surrender 10% of the wages they earned at AWMS.  This practice further aggravated the existing federal, state and municipal statutory wage violations being committed by Defendants.

230.    Defendants have a policy that they will not pay Plaintiffs for their work until Plaintiffs arrive at a client's home for a job, despite the fact that Defendants require Plaintiffs to first report to Defendants' warehouse in the Bronx for roughly one-and-one-half hours every day Plaintiffs are assigned to a job.

231.    Defendants withhold Plaintiffs' earned wages for items which are damaged on a job to which Plaintiffs are assigned when these are Defendants' own costs of doing business and

which further encroach upon Plaintiffs' earned wages resulting in violations of federal, state and municipal wage statutes.

232.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

233.    By employing this practice, Defendants avoided paying Plaintiffs at the overtime rate of time and a half for most or all of their hours worked in excess of forty (40) hours per week.

234.    Defendants failed to post require wage and hour posters and did not provide Plaintiffs with statutorily require wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

235.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

236.    Defendants did not provide Plaintiffs, and similarly situated employees, with the wage statements and annual pay notices require by NYLL §§195(1) and 195(3).

237.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as require by NYLL §195(3).

238.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as require by New York Labor Law §195(1).

## FIRST CAUSE OF ACTION
**(Violation of FLSA Overtime/Unlawful Deduction/Recordkeeping Provisions)**

239.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

240.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards

Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA class members), control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for their employment.

241.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

242.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

243.    Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

244.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

245.    Defendants took unlawful deductions from Plaintiffs' earned wages and the FLSA Collective's earned wages.

246.    Defendants, in violated of the FLSA, failed to pay Plaintiffs agreed-upon wages by virtue of their withholding policies, time-clock policies and chargeback policies as described herein.

247.    Defendants failed to satisfy the FLSA's recordkeeping requirements.

248.    Defendants acted willfully in their violations of the FLSA's requirements.

249.    Plaintiffs (and the FLSA Collective) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**(Violation of the Overtime/Unpaid Wages/Unlawful Deductions/Spread-of-Hours-Pay/Recordkeeping/Wage Statement Provisions of NYLL)**

250.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

251.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, control terms and conditions of employment, and determine the rates and methods of any compensation in exchange for employment.

252.    Defendants, in violation of the NYLL and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor.

253.    Defendants failed to pay Plaintiffs (and the Class members) in a timely fashion, as require by Article 6 of the New York Labor Law.

254.    Defendants' failure to pay Plaintiffs (and the Class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

255.    Defendants, in violation of the NYLL, failed to pay Plaintiffs agreed-upon wages by virtue of their withholding policies, time-clock policies and chargeback policies as described herein.

256.    Plaintiffs (and the Class Members) were damaged in an amount to be determined at trial.

257.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

258.     Defendants failed to pay Plaintiffs (and the Class) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 and 137-3.11.

259.     Defendants' failure to pay Plaintiffs (and the Class) an additional hour's pay for each day Plaintiffs' (and the Class) spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

260.     Plaintiffs (and the Class members) were damaged in an amount to be determined at trial.

261.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

262.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as require by NYLL §195(1).

263.     Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

264.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

265.     Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as require by NYLL 195(3).

266.     Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorney's fees.

267.    Defendants acted willfully in their violation of the above-described NYLL requirements.

## THIRD CAUSE OF ACTION

### (Breach of Contract)

268.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

269.    Although Plaintiffs were employees and not contractors, assuming, arguendo, Plaintiffs would still be entitled to damages based upon the above-described facts under the latter scenario as Plaintiffs performed their moving services, Defendants failed to perform their contractual obligations, i.e., full payment for the moving services, and Plaintiffs suffered damages as a result, i.e., failure to receive the full consideration for which they had contracted.

270.    These allegations are as true for Class members as they are for Plaintiffs.

271.    Plaintiffs (and the Class Members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (Quantum Meruit)

272.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

273.    Plaintiffs performed the moving services described in the above-described pleading in good faith with the expectation of Plaintiffs' agreed-upon wage, which is a reasonable value of those services.

274.    Defendants accepted Plaintiffs' moving services as they were rendered to Defendants' clients on Defendants' behalf.

275.    Plaintiffs never obtained the agreed-upon wage insofar as deductions to which Plaintiffs did not agree were taken from the earned wages.

276.    These allegations are as true for Class members as they are for Plaintiffs.

277.    Plaintiffs (and the Class Members) were damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, its nature, and their right to join, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Certifying this case as a Class Action pursuant to FRCP 23 of the FRCP;

(c)    Designating Plaintiffs as Class Representatives, reasonable service awards for each Plaintiff, and their counsel of record as Class Counsel;

(d)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(e)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(f)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs and the FLSA class members;

41

(g)     Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(h)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the Class;

(j)     Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the members of the FLSA Class;

(k)     Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA Class members compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs and the FLSA Class members;

(m)     Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs and the FLSA class members liquidated damages in an

amount equal to one hundred percent (100%) of the total amount of spread of hours pay and

overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(p)     Awarding Plaintiffs and the FLSA class members pre-judgment and post-

judgment interest as applicable;

(q)     Awarding Plaintiffs and the FLSA class members the expenses incurred in this

action, including costs and attorney's fees; and

(r)     All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       March 21, 2016

                              LINA FRANCO LAW, P.C.
                              THE LAW OFFICE OF RYAN LOZAR, P.C.

                              ____/s/*Ryan Lozar; Lina Franco*____ _____
                              By:     Ryan Lozar
                                      Lina Franco
                                      *Attorneys for Plaintiffs*